## COSGROVE et al., Appellants, v. LEONARD MERCANTILE & REALTY COMPANY.

### Division One, May 27, 1903.

1. **Sales: COMMISSIONS: DEED TO STOCK COMPANY.** A deed of land to a stock company composed wholly of stockholders of the company owning the land, except one share, made after the contract authorizing agents to sell it for a certain price had expired, does not entitle the agents to commissions on a much greater capital stock named in the incorporation articles.

2. **———: ———: ———: FOR SELLING STOCK.** The contract was that plaintiffs were to sell the land for $50,000, and when that was not done within the time specified, the owners deeded it to a company of which they were the stockholders, as the result of their getting a certain man before the contract expired interested in the enterprise, the purpose of the company being thereafter to sell enough of the stock to equal or exceed the price. *Held,* that the raising by the company of the price of the stock to forty cents after it had sold ten thousand dollars of it did not entitle the plaintiffs to show that they thereafter found purchasers for all the rest of the stock at thirty-three and one-third cents, for the reason that there is no averment in the petition that the company ever agreed to allow them to sell stock at thirty-three and one-third cents, nor can any such averment be inferred from the fact that the price originally fixed upon was $50,000 for the land, and the company was organized for $150,000 with nothing but the land for capital.

3. **———: CONTRACT: DAMAGES.** One can not declare upon a contract and seek to recover as for a performance of a contract, and then be permitted to recover damages for a breach of that contract.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

AFFIRMED.

*Thomas & Hackney* for appellants.

(1) Plaintiffs' evidence was ample to submit the case to the jury. It showed that plaintiffs promoted

the enterprise of organizing the Chitwood company to whom defendant conveyed the land for a consideration of $150,000, acknowledged by defendant to have been received. None of the stock of the Chitwood company was put in the control of the defendant. It had the obligation of the Chitwood company, a solvent purchaser for $150,000, which if not paid could have been collected. The defendant can not impeach this transaction and avoid plaintiffs' commission by saying that plaintiffs were required to wait till the stock of the Chitwood company was sold by the shareholders of that company at such prices as they saw fit to make and to increase from time to time without plaintiffs' consent. (2) As to plaintiffs and defendant, the Chitwood company was the purchaser of the property, and even if plaintiffs were required to wait for payment of their commission until the stock was sold, yet plaintiffs were entitled to have all stock sold at $33 1-3 per share which would produce $50,000, the money value of defendant's land fixed by the contract; and if defendant or the Leonards raised the price of the stock and refused to sell at $33 1-3 per share, such refusal was tantamount to an election by the holder of the stock to keep it at that price, and should be treated as an actual cash sale for $33 1-3 per share, so far as plaintiffs were concerned. This was a full and complete performance by plaintiffs of their part of the contract, and entitled plaintiffs to receive at least $5,000 commission. (3) The ruling of the trial court that the question of plaintiffs having procured a purchaser ready and willing to buy the stock at $33 1-3 per share was not raised by the pleadings, was erroneous. The defendant's answer averred that the "plaintiffs did not procure a purchaser ready, able and willing to take the stock." If plaintiffs' petition lacked in averments on that point, the answer supplied the petition by express aider. Ricketts v. Hart, 150 Mo. 64. (4) As the Chitwood company purchased of defendant the land, and the stock was

taken by others than the defendant, the most that could be required of plaintiffs was to wait for their commission until the defendant had realized from the Chitwood company $50,000, the agreed price of the land. The defendant, in fact, received $65,366.66 from the Chitwood company's stock sales. The plaintiffs unquestionably were entitled to show that fact, and on this showing were entitled to ten per cent commission.

*Galen & A. E. Spencer* for respondent.

(1) The first count is based on the theory that the conveyance to the Chitwood company was a full performance of the commission contract. Under the evidence there is no basis for such contention. (2) The instruction was properly given under the third count. The written contract was pleaded and introduced in evidence. This contract provides that plaintiffs are by their efforts, within a fixed time, to accomplish a certain result, viz., the receipt by defendant of certain money; if this be done, then the time and manner of payment is settled. Even if this count be construed as *quantum meruit,* the contract is binding on plaintiffs and their right to recover is limited by its terms. Stout v. Co., 52 Mo. 342; Barnett v. Swearingen, 77 Mo. App. 71; Crapson v. Wallace Bros., 71 Mo. App. 682.

MARSHALL, J.—This is an action to recover commissions for the alleged sale by the plaintiffs, as real estate brokers, of 80 acres of real estate in ·Jasper county belonging to the defendant.

The petition is in three counts. The first count alleges that the defendant placed the land in the plaintiffs' hands for sale at the price of $50,000; that the plaintiffs procured a purchaser therefor at the price of $150,000, and the defendant sold the land to such purchaser, the Chitwood Hollow Mining Company, at that price; that it was agreed that the plaintiffs should re-

ceive ten per cent of the sum realized from the sale for their services, of which they have received only $1,300; and that there is a balance due them of $13,700, for which judgment is asked.

The second count alleges that by a written contract the defendant placed the land in the plaintiff's hands as its agents for sale at the price of $50,000, of which the plaintiffs were to receive ten per cent as their commission, and whereby it was agreed that the commission was to be paid "whether said land shall be sold and conveyed directly or whether it should be sold by and through the organization of a stock company, and the money value of said land should be realized by the sale of stock issued by such company;" that the plaintiffs performed all the conditions of the contract on their part and visited Chicago and induced Dexter and Johnson to form a stock company, known as the Chitwood Hollow Mining Company, and the defendant conveyed the land to said company for a recited consideration of one hundred and fifty thousand dollars, and shares of stock of said company of the par value of one hundred and fifty thousand dollars were issued, all of which, except three shares, were issued to and held by the defendant; that through the agency and efforts of the plaintiffs the defendant has received one hundred thousand dollars from the sale of said stock; that the plaintiffs have received $1,300 on account of their commissions and there is a balance due them of $8,700 for which judgment is asked.

The third count of the petition alleges that the land was placed in their hands, by a written contract, for sale at the price of $50,000, and that they were to receive ten per cent commission on the amount realized by the defendant, to be paid when the purchase price was received, whether the land was sold directly or through the organization of a stock company and the money value of the land realized by the sale of stocks; that the plaintiffs advertised the land for sale and

its great advantages as mineral property and visited Chicago, at great expense, to induce persons to become interested in the land, and did induce certain men of influence in Chicago to form a stock company known as the Chitwood Hollow Mining Company, and the defendant conveyed the land to said company for a consideration of $150,000, and that all of the one hundred and fifty thousand dollars of stock of said company, except three shares, were issued to the defendant; that after the organization of the company, at the request of the defendant, the plaintiffs continued to advertise the land as rich in lead and zinc ore, and induced their relatives and acquaintances to take many lots on said land to prospect and mine the same, and to place pumps and machinery thereon, thereby increased the value thereof and facilitated and procured the sale of the stock of said company held by the defendant at large profits and for large sums of money; that the plaintiffs' services were reasonably worth ten per cent of the amount realized by the defendant from the sale of such stock, and that the defendant agreed to pay them that amount therefor; that during the years 1897, 1898 and 1899 the defendant, through the efforts of the plaintiffs, sold all the shares of the stock of said mining company, and received therefor one hundred thousand dollars; that the plaintiffs have received thirteen hundred dollars on account of their commissions, and that there is a balance due them of $8,700, for which judgment is asked.

The answer is, first, a general denial, except as modified by the further allegations of the answer, and second, a special defense, to-wit, that on December 22, 1896, the defendant entered into a written contract with the plaintiffs which is set out in full, whereby it placed the land in the plaintiffs' hands, as its agents, for sale at the price of $50,000; the defendant to furnish a complete abstract of title, make deeds to such persons as the plaintiffs directed, upon payment of the money stated, but to have a right to lease the land and collect royalties

until the land was sold. The contract then provided as follows:

"That said parties of the second part shall receive as compensation for their services in selling said land a commission of ten per cent on the amount realized for same by party of the first part, said commission to be paid as the purchase price may be paid to party of the first part, and said commission of ten per cent shall be due and payable to said Cosgroves whether said land be sold and conveyed directly to purchaser or purchasers, or whether it may be sold by and through the organization of a stock company, and the money value of said land realized by said party of the first part by the sale of stock issued by said company.

"This contract to remain in force for the period of ninety days from the date hereof, but it is expressly agreed and understood by the parties to this contract that in case a trade shall be pending with any customer secured by said Cosgroves, at the date of the expiration of this contract, and the deal be consummated after the expiration of this contract, by either Cosgroves or party of the first part, with such customer, then said Cosgroves shall be entitled to said commission of ten per cent on said sale."

The answer then concludes with the following defense:

"Defendant further states that no purchaser was ever procured for said land, as a tract of land, and it was thereafter determined and agreed to attempt to realize the said sum of $50,000 to defendant therefor, by the organization of a corporation, the entire capital stock of which was to be owned by the president and secretary of defendant, and then the stock of said proposed corporation was to be sold and the money realized through the sale of such stock. That the officers of defendant caused to be organized a corporation known as the Chitwood Hollow Mining Land Company, the entire capital stock of which was owned or controlled by

the president and secretary of defendant, and caused said land to be conveyed to such new corporation; that thereafter and under the contract with them, above stated, plaintiffs undertook to bring about the sale of stock in such new corporation, and thereafter through the efforts of plaintiffs and under such contract defendant sold 305 shares of stock in said new company at $33.33 1-3 per share, or for the gross sum of $10,-166.66; thereafter 430 shares thereof at $40 per share, or for the gross sum of $17,200, making total sales amounting to $27,366.66. That when defendant conveyed the said land to the Chitwood Hollow Mining Land Company it was solely for the purpose aforesaid, and defendant received no consideration whatever therefor; that plaintiff never procured any person ready, willing and able to buy any other shares of said stock; that plaintiffs are entitled to the commission on the above sales of ten per cent thereof, or $2,736.66; that defendant has paid plaintiffs on said account as follows: September 13, 1897, $1,000; November 15, 1897, $300; leaving a balance due plaintiffs of $1,436.66, which with interest thereon to March 31, 1899, amounted to $1,541.06. That on said last-named day defendant tendered and offered to pay plaintiffs the said sum of $1,541.06 in settlement of the sums due them under aforesaid contract, but plaintiffs refused to accept said tender and would not accept such sum. That the said contract with plaintiffs and all rights thereunder had expired long prior to said date. That defendant has heretofore deposited said sum of $1,541.06 in the court for the use of plaintiffs in payment of the said sum due plaintiffs from it, and now continues such tender.''

The reply is a general denial.

At the trial the plaintiff introduced and read in evidence the contract of December 22, 1896, which was set up in full in the defendant's answer, and then read in evidence the articles of association and certificate of incorporation of the Chitwood Hollow Mining Land

Company, dated respectively April 10 and 12, 1897, the incorporators being the stockholders and officers of the defendant company, its attorney, Mr. Spencer, and Charles W. Johnson, of Chicago, whom the plaintiffs had interested in the matter and through whom three hundred and five shares of the stock of the company had been sold at thirty-three dollars and thirty-three and a third cents per share. The plaintiffs then read in evidence the deed from the defendant to said Mining company, dated April 13, 1897, conveying the land for a recited consideration of one hundred and fifty thousand dollars. The plaintiffs then showed by parol testimony that the contract of December 22, 1896, was the only contract they ever had with the defendant; that under that contract they induced C. W. Johnson, of Chicago, to interest himself in the matter and that he worked on the matter for several months; that as a result of his "taking hold" "a corporation was formed to place the title of this land by means of transferring the stock;" that the defendant received no money for the deed to the Chitwood Hollow Mining Land Company; that in June or July, 1897, Mr. Johnson sold three hundred shares of the stock of the company for ten thousand dollars and the money was paid to the defendant; that plaintiffs had received $1,300 on account of their commissions, and that on March 1, 1899, the defendant tendered $1,541.06 to the plaintiffs, and they refused it. The plaintiffs further showed by the testimony of Franklin Playter of Boston that he had an option from the defendant on 760 shares of stock of the Chitwood company at $50 a share, and that he sold the stock to a third party and paid the defendant $38,000, but that he did not then know the plaintiffs or Johnson and they had nothing to do with the sale.

The plaintiffs then offered to show "that after selling some 300 shares of the stock at 33 1-3 cents on the dollar, they raised the price of the stock—the defendant did, or whoever held the stock—to 40 cents and re-

fused to sell it for any less price per share, and also offer to show that plaintiffs procured and had purchaser ready at that time to buy all of the stock at 33 1-3 per share.''

The defendant objected to the offer as made on the ground that it was incompetent, irrelevant and immaterial and not proper under the pleadings. The court sustained the objection, and the plaintiffs excepted. Thereupon the plaintiffs rested, and the court gave the following instruction: ''The court instructs the jury that under the pleadings and the evidence you should find the issues for the plaintiffs for $1,541.06,'' that being the amount tendered by the defendant. Thereupon the plaintiffs took a nonsuit, with leave, and upon its being overruled, after proper steps, they appealed.

## I.

The first error assigned is the action of the court in giving the peremptory instruction at the close of the plaintiffs' case.

The first count of the petition is predicated upon the proposition that the transfer of the land by the defendant to the Chitwood Hollow Mining Land Company, and the issuance by that company to the defendant of the one hundred and fifty thousand dollars of the stock of the mining company, constituted a sale of the land for that sum, and hence the plaintiffs are entitled to ten per cent thereof.

The evidence wholly fails to support this contention. It will be observed that the contract was dated December 22, 1896, and that its life was limited to ninety days from that date. During that time nothing whatever was accomplished by the plaintiffs looking towards a sale of the land. The evidence shows that on April 10, 1897, which was nineteen days after the contract of December 22, 1896, had expired by its terms, the mining company was organized.

The record does not show at whose suggestion this was done. But it does appear that the stockholders of defendant company, and the attorney of the defendant company, subscribed for all of the stock of the mining company, except one share which was taken by Chas. W. Johnson, of Chicago. The answer admits that the corporation was thus formed to facilitate the sale of the land, by selling stock in the company that owned the land. The testimony of the plaintiffs shows that no money was paid to the defendant for the land, and that the corporation was formed and the land conveyed to it for the purpose of effecting a sale of the land through this means. The evidence wholly fails to support the first count of the petition, and the plaintiffs were not entitled to any judgment on that count.

The second count of the petition is bottomed on the proposition that through the agency of the plaintiffs the defendant realized one hundred thousand dollars from the sale of stock in the mining company.

The plaintiff's evidence shows that through their efforts Charles W. Johnson was induced to "take hold" of the matter, and that he effected the sale of three hundred shares of the stock for the sum of ten thousand dollars, which the defendants received. This showing would entitle the plaintiffs to one thousand dollars, commissions, but the plaintiffs admit in this court that they have been paid $1,300. So that upon this showing the plaintiffs would not be entitled to recover anything upon the second count, having already received three hundred dollars more than they have shown themselves entitled to.

But the defendant's answer makes out a better case for the plaintiffs under this count than they have made out for themselves, for it admits that through the efforts of the plaintiffs, under the contract, the defendant sold three hundred and five shares of stock at $33.33 1-3, amounting to $10,166.66, and also four hundred and thirty shares at forty dollars a share, amounting to

$17,200, aggregating $27,366.66, on which the plaintiffs were entitled to a commission of ten per cent, amounting to $2,736.66, of which they had been paid $1,300, and that they tendered the plaintiffs the balance of $1,436.66 with interest, amounting to $1,541.06, before the institution of this suit and that the plaintiffs refused to accept the same, and so the defendant made good its tender and paid that amount into court. Thus the plaintiffs become entitled under the pleadings to a judgment on the second count for $1,541.06.

The third count of the petition rests upon the proposition that the plaintiffs' efforts enabled the defendant to realize one hundred thousand dollars from the sale of the stock and that they are reasonably entitled to recover ten thousand dollars of which $1,300 had been received.

The evidence does not support this count. As before stated, the plaintiffs' evidence shows that only three hundred shares of stock were sold by reason of their efforts. The defendant admits in its answer that they sold 735 shares by reason of the plaintiffs' efforts, for $27,366.66, and that it had paid the plaintiffs $1,300 and still owes them $1,436.66, which with interest they tendered. The evidence shows that the defendant sold to Franklin Playter, of Boston, seven hundred and sixty shares of the stock at fifty dollars a share, amounting to thirty-eight thousand dollars, but this was not brought about in any manner or degree by the plaintiffs, for Playter did not know the plaintiffs or Johnson until several months after the sale.

Under the pleadings and evidence, therefore, the plaintiffs were entitled to recover only $1,541.06 and the court properly directed the jury to return a verdict for the plaintiffs for that sum.

The plaintiffs claim, however, that the court erred in refusing to allow them to show that after three hundred shares had been sold at 33 1-3 cents a share, the defendant raised the price to forty cents a share, and

refused to sell at a less price, and that the plaintiffs had procured a purchaser who was ready to take all the stock at thirty-three and a third cents a share.

There was no error in the ruling of the court in this regard, for there was no issue in the case to which such evidence could apply. There is no averment anywhere that the defendant ever agreed to allow the plaintiffs to sell the stock at thirty-three and a third cents a share. There is an averment that the price of the land was first fixed at fifty thousand dollars, but there is no averment that when the defendant had received fifty thousand dollars from the sale of the stock, the balance of the stock held by it, if any, should cease to belong to it. The fact is the land represented all of value that the stock was based upon. This is not a suit for damages for breach of the contract, caused by the refusal of the defendant to allow the plaintiffs to sell the stock, but the action proceeds upon the opposite theory that the land or stock had actually been sold through the efforts of the plaintiffs and that the defendant had actually received one hundred and fifty thousand dollars, according to the first count, or one hundred thousand dollars, according to the second and third counts, of which the plaintiffs were entitled to ten per cent.

It never was permissible to declare upon a contract and seek to recover as for a performance of the contract, and then be allowed to recover damages as for a breach of the contract. [Cole v. Armour, 154 Mo. l. c. 350.] Notwithstanding the laxity of the code practice, the *probata* must still tend in the same direction as the *allegata,* and not flatly contradict it.

The judgment of the circuit court is right, and is affirmed. All concur, except *Robinson, J.,* absent.